16 U.S. 201 (____)
3 Wheat. 201
The ANNE: BARNABEU, Claimant.
Supreme Court of United States.

*202 *437] *March 5th. Harper, for the appellant and claimant.
D.B. Ogden and Winder, contrà.
*205 March 7th, 1818. STORY, Justice, delivered the opinion of the court.
The first question which is presented to the court is, whether the capture was made within the territorial limits of Spanish St. Domingo. The testimony of the carpenter and cook of the captured vessel distinctly asserts, that the ship, at the time of the capture, was lying at anchor, about a mile from the shore of the island. The testimony of the captors as distinctly asserts, that the ship then lay at a distance of from four to five miles from the shore.
It is contended by the counsel for the claimants, that captors are in no cases admissible witnesses in prize causes, being rendered incompetent by reason of their interest. It is certainly true, that, upon the original hearing, no other evidence is admissible than that of the ship's papers, and the preparatory examinations of the captured crew. But upon an order for further proof, where the benefit of it is allowed to the captors, their attestations are clearly admissible evidence. This is the ordinary course of prize courts, especially, where it becomes material to ascertain the circumstances of the capture; for in such cases, the *facts lie as much within the [*445 knowledge of the captors as the captured; and the objection of interest generally applies as strongly to the one party as to the other. It is a mistake, to suppose that the common-law doctrine, as to competency, is *206 applicable to prize proceedings. In courts of prize, no person is incompetent, merely on the ground of interest. His testimony is admissible, subject to all exceptions as to its credibility. The cases cited at the argument distinctly support this position; and they are perfectly consistent with the principles by which courts of prize profess to regulate their proceedings. We are, therefore, of opinion, that the attestations of the captors are legal evidence in the case, and it remains to examine their credit. And without entering into a minute examination, in this conflict of testimony, we are of opinion, that the weight of evidence is, decidedly, that the capture was made within the territorial limits of Spanish St. Domingo.
And this brings us to the second question in the cause; and that is, whether it was competent for the Spanish consul, merely by virtue of his office, and without the special authority of his government, to interpose a claim in this case for the assertion of the violated rights of his sovereign? We are of opinion, that his office confers on him no such legal competency. A consul, though a public agent, is supposed to be clothed with authority only for commercial purposes. He has an undoubted right to interpose claims for the restitution of property belonging to the subjects of his own country; but he is not considered as a minister, or diplomatic agent of his *446] sovereign, *intrusted, by virtue of his office, with authority to represent him in his negotiations with foreign states, or to vindicate his prerogatives. There is no doubt, that his sovereign may specially entrust him with such authority; but in such case, his diplomatic character is superadded to his ordinary powers, and ought to be recognized by the government within whose dominions he assumes to exercise it. There is no suggestion or proof of any such delegation of special authority in this case; and therefore, we consider this claim as asserted by an incompetent person, and on that ground, it ought to be dismissed. It is admitted, that a claim by a public minister, or, in his absence, by a chargè d'affaires, in behalf of his sovereign, would be good. But in making this admission, it is not to be understood, that it can be made in a court of justice, without the assent or sanction of the government in whose courts the cause is depending. That is a question of great importance, upon which this court expressly reserve their opinion, until the point shall come directly in judgment.[(a)]
The claim of the Spanish government for the violation of its neutral territory being thus disposed of, it is next to be considered, whether the British claimant can assert any title founded upon that circumstance? By the return of peace, the claimant became rehabilitated with the capacity to sustain a suit in the courts of this country; and the argument is, that a capture *447] made in a neutral territory is void; and *therefore, the title by capture being invalid, the British owner has a right to restitution. The difficulty of this argument rests in the incorrectness of the premises. A capture made within neutral waters is, as between enemies, deemed, to all intents and purposes, rightful; it is only by the neutral sovereign that its legal validity can be called in question; and as to him and him only, is it to be considered void. The enemy has no rights whatsoever; and if the netural *207 sovereign omits or declines to interpose a claim, the property is condemnable, jure belli, to the captors. This is the clear result of the authorities; and the doctrine rests on well established principles of public law.[(a)]
There is one other point in the case which, if all other difficulties were removed, would be decisive against the claimant. It is a fact, that the captured ship first commenced hostilities against the privateer. This is admitted on all sides; and it is no excuse, to assert that it was done under a mistake of the national character of the privateer, even if this were entirely made out in the evidence. While the ship was lying in neutral waters, she was bound to abstain from all hostilities, except in self-defence. The privateer had an equal title with herself to the neutral protection, and was in no default, and approaching the *coast, without showing her national [*448 character. It was a violation of that neutrality which the captured ship was bound to observe, to commence hostilities, for any purpose, in these waters; for no vessel coming thither was bound to submit to search, or to account to her for her conduct or character. When, therefore, she commenced hostilities, she forfeited the neutral protection, and the capture was no injury for which any redress could be rightfully sought from the neutral sovereign.
The conclusion from all these views of the case is, that the ship and cargo ought to be condemned as good prize of war. And the only remaining inquiry is, whether the captors have so conducted themselves as to have forfeited the rights given by their commission, so that the condemnation ought to be to the United States? There can be no doubt, that if captors are guilty of gross misconduct, or laches, in violation of their duty, courts of prize will visit upon them the penalty of a forfeiture of the rights of prize, especially, where the government chooses to interpose a claim to assert such forfeiture. Cases of gross irregularity, or fraud, may readily be imagined, in which it would become the duty of this court to enforce this principle in its utmost rigor. But it has never been supposed, that irregularities, which have arisen from mere mistake or negligence, when they work no irreparable mischief, and are consistent with good faith, have ordinarily induced such penal consequences. There were some irregularities in this case; but there is no evidence upon the record, from which we can infer, that there was any fraudulent *suppression, or any gross misconduct, inconsistent with [*449 good faith; and therefore, we are of opinion, that condemnation ought to be to the captors.
It is the unanimous opinion of the court, that the decree of the circuit court be affirmed, with costs.
Decree affirmed.
NOTES
[(a)] See Viveash v. Becker, 3 Maule & Selwyn 284, as to the extent of the powers and privileges of consuls.
[(a)] The same rule is adhered to, in the prize practice of France, and was acted on in the case of the Sancta Trinita, a Russian vessel, captured within a mile and a half of the coast of Spain; but the council of prizes refused restitution, because the Spanish government did not interpose a claim on account of its violated territory. Bonnemant's Translation of De Habreu, tom. 1, p. 117.